IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

```
───────────────────────────────
                              :
RAYMOND LANKFORD, et al.,      :
                              :    Civil Action
            Plaintiffs,        :    No. 04-2636 (JBS)
                              :
      v.                       :
                              :    OPINION
E. ALBERT IRBY, et al.,        :
                              :
            Defendants.        :
                              :
───────────────────────────────
```

**APPEARANCES:**

Roland G. Hardy, Jr., Esq.
ROLAND G. HARDY, JR. & ASSOCIATES, P.C.
30 E. Centre Street
Woodbury, New Jersey 08096
      Attorney for Plaintiffs

Brian M. Fleischer, Esq.
Jaclyn Scarduzio Dopke, Esq.
FLEISCHER & FLEISCHER
Plaza 1000 at Main Street
Suite 208
Voorhees, New Jersey 08043
      Attorneys for Defendants Vintage Mortgage Corporation and
      Lawrence D. Lewis

**SIMANDLE**, District Judge:

      This matter is before the Court on plaintiffs Raymond and

Yolanda Lankford's ("Plaintiffs") motion for summary judgment as

to Plaintiffs' breach of contract, fraud, breach of fiduciary

duty, and unauthorized appropriations claims against Defendants

Vintage Mortgage Corporation ("Vintage") and Lawrence D. Lewis

("Lewis")(Vintage and Lewis, collectively, shall be referred to

as the "Defendants.")  Plaintiffs move for summary judgment pursuant to Rule 56, Fed. R. Civ. P., and for sanctions of Defendants Vintage and Lewis pursuant to Rule 11, Fed. R. Civ. P. For the reasons expressed below, this Court will grant in part and deny in part Plaintiffs' motion for summary judgment. Plaintiffs are entitled to judgment as a matter of law regarding their breach of contract claim against Vintage but have failed to provide any facts or argument regarding their claims of fraud or breach of fiduciary duty against either Vintage and Lewis. However, because Plaintiffs have failed to provide the Court with a coherent and understandable breakdown of damages Plaintiffs seek, the Court will require additional submissions from Plaintiffs detailing the exact damages Plaintiffs seek.  The Court will also deny Plaintiffs' motion for sanctions under Rule 11, Fed. R. Civ. P.

I.   **BACKGROUND**[1]

   A.   **The Short-Term Loans**

   Between December 1, 1999 and October 30, 2002, E. Albert Irby ("Irby") and First Round Sports, Inc. served as a sports agent and financial manager for plaintiff Raymond Lankford.[2]

---

[1]For the purposes of this opinion, only facts related to the present motions against Defendants Vintage and Lewis will be discussed in this Opinion.

[2]Lankford was a major league baseball player for the St. Louis Cardinals.  (Second Amended Complaint ¶ 23.)

(Pl. Statement of Facts ("SOF") ¶ 1.)  Co-defendants Irby and Lewis shared office space where, in December of 1999, the two discussed Lewis' company's (Vintage Mortgage Company) need for short-term capitalization.  (Pl. SOF ¶ 2.)  To this end, on December 22, 1999 Irby, on behalf of Lankford, loaned Vintage $200,000 from Lankford's account to serve as the capitalization of Vintage.  (Pl. Ex. 1; Pl. SOF ¶ 3.)  In connection with the loan, Lewis executed a promissory note stating that the $200,000 would be repaid in 30 days with interest.  (Pl. Ex. 2.)  On January 14, 2000, Lewis repaid the loan. (Pl. Ex. 3, Deposition Transcript of Lawrence Lewis, at 66.)  On December 29, 2000, Lewis again requested and obtained a short-term loan from Irby from Lankford's account this time for $250,000.  (Lewis Dep. Trans. at 80.)  Again Lewis executed a promissory note setting payment with interest to be made in 30 days.  (Id.)  On January 12, 2001, Lewis repaid the loan by writing a check on behalf of Vintage to Lankford in the amount of $251,800, and delivered that check to Irby.  (Pl. Ex. 6.)

**B.   The Long-Term Loan**

In July 2002, Lewis approached Irby about a long-term loan from Lankford that would be used for "growth" and "marketing" purposes.  (Lewis Dep. Trans. at 87-88.)  Lewis requested that

his attorney prepare a note and mortgage[3] on July 24, 2002 in favor of Lankford to secure the loan.  (Id.)  Those documents were never executed, but they included terms providing for interest payments, a final due date of August 1, 2007 and an acceleration clause that would make all funds due immediately upon default.  (Pl. Ex. 9.)  Those documents also included a provision providing that Lewis would be responsible for attorney fees in the event he defaulted on the loan.  (Id.)  Lewis states that those documents were never executed because no agreement was made, and that any discussions of a mortgage lien were in negotiations.  (Defs. Br. at 9.)

In September or October of 2002, Lankford commissioned an audit of his financial matters being handled by Irby.  (Affidavit of Raymond Lankford ¶ 4.)  Lankford states that it was during this audit he discovered the payments made to Lewis and Vintage in 2000 and 2002, including the long-term loan, that Lankford claims he did not authorize.  (Def. SOF ¶ 16.)  At that time, Lankford retained Stanley King, Esq. to recover any unauthorized expenditures.  (Id. at 6.)

After King met with Lewis and demanded repayment, King received a check from Vintage in the amount of $7,787.63, allegedly representing interest from August 2002 through January,

---

[3]The drafted but unexecuted mortgage and note provide for a second lien on property located at 109 East Laurel Road, Stratford, New Jersey.

4

1, 2003.  (Pl. Ex. 10.)  By letter dated February 3, 2003, King acknowledged receipt of Vintage's check, and restated that Lankford did not authorize the long-term loan and demanded repayment in full.  (Pl. Ex. 10.)

Defendants notes dated August 20, 2003 show that a "new deal" was made where Lewis would make monthly interest payments of $1,458.33 and quarterly principal payments of $25,000.  (Pl. Ex. 11.)  Plaintiffs allege that Defendants were also to execute and record a second mortgage in favor of Plaintiffs.  (Pl. Br. at 7.)  According to Vintage's internal records, Vintage made payments of $1,458.33 each month for March, April, May and June of 2003.  (Pl. Ex. 11-13.)  Further, on July 19, 2003, Vintage sent a check for $10,000 labeled "principal payment" to Lankford.  (Pl. Ex. 12.)  Lewis wrote a note accompanying that payment, saying that the remainder of the quarterly principal payment would be made by the end of July, 2003.  (Pl. Ex. 12, Memorandum from Lawrence Lewis to Stanley King dated 7/18/2003.)  Defendants continued to make interest payments for July and August 2003.  (Pl. Ex. 13.)  Following those interest payments, no further payment was received by Plaintiffs, and no mortgage was recorded by Defendants.  (Pl. SOF ¶ 25.)

### C.   The July 7, 2004 Agreement

Plaintiffs retained the services of Roland G. Hardy, Jr., Esq., to initiate legal action against Defendants.  On February

3, 2004, Hardy sent Lewis a letter demanding full repayment of
the long-term loan.  (Pl. Ex. 15.)  Hardy's letter also included
a proposed Complaint but mentioned Defendants could avoid
litigation by arranging with him to repay all funds owed to
Lankford.  (Id.)  Responding by email, Defendants stated that
they "intend to resolve the matter," acknowledged the payment
arrangement with King, and then expressed confusion as to the
current terms since there had been two arrangements - one made
with Irby and the later one with King.  (Pl. Ex. 16.)  By letter
dated May 6, 2004, Lewis' attorney (Rupert Hall, Jr.) informed
Plaintiffs that "Lewis received a verbal commitment from a
private investor (Fannie Mae) in the approximate amount of
$250,000," and that those funds would be used to pay defendants
debt to Plaintiffs.  (Pl. Ex. 17.)

Plaintiffs claim that they withheld filing a complaint
against Defendants because (1) Plaintiffs were assured that Lewis
would repay the loan and (2) that filing the complaint would
jeopardize Lewis' pending deal and, by extension, Plaintiffs'
receipt of repayment.  (Pl. SOF ¶ 28.)  Plaintiffs filed their
Complaint on June 4, 2004, which did not name Lewis and Vintage.
(See Complaint.)

Plaintiff sent a letter dated July 7, 2004, allegedly
confirming an oral agreement by which Vintage would pay $10,000
on July 15, 2004, August, 15, 2004, and the balance on or before

6

September 30, 2004; and Vintage would provide Plaintiffs with a
second mortgage to secure their interest; in exchange for the
Plaintiffs' forbearance from filing a complaint against them.
(Pl. Ex. 18.)  Lewis acknowledges receipt of this letter, and
argues that these terms were in the frame of negotiations subject
to the condition that Vintage's deal with a private investor
materialized.  (Lewis Dep. Trans. at 113.)  Defendants made
monthly payments of $10,000 for both July and August.  (Pl. Ex.
19.)  Defendants made no further payments, did not record the
mortgage as promised, and, on January 26, 2005, Plaintiffs
subsequently filed a Second Amended Complaint naming Vintage and
Lewis as co-defendants.  (Def. SOF ¶ 31, First Amended Complaint,
and Second Amended Complaint.)

     Plaintiffs filed the present motion for summary judgment on
October 25, 2005, and the present motion for Rule 11 sanctions on
June 1, 2006. [Docket Items 58 and 73.]

## II.  PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

     Plaintiffs move for summary judgment arguing that (1)
Defendants breached a contract with Plaintiffs by failing to make
payments pursuant to the contract of July 7, 2004, and, in the
alternative; (2) Defendants breached the contract by failing to
make payments pursuant to a contract formed by promissory
estoppel; (3) Defendants breached a fiduciary duty to the
Plaintiffs; (4) Defendants committed fraud; and (5) Defendants

conduct constituted unauthorized appropriation.[4]  Plaintiffs
further demand reasonable attorneys fees.  Defendants resist this
motion, arguing that (1) there is a disputed issue as to whether
the facts infer an enforceable contract or were simply
negotiations, and (2) the Plaintiffs have not established
personal liability as to Lewis.

### A.   Standard of Review

Summary judgment is appropriate when the materials of record
"show that there is no genuine issue as to any material fact and
that the moving party is entitled to judgment as a matter of
law." Fed. R. Civ. P. 56(c).  A dispute is "genuine" if "the
evidence is such that a reasonable jury could return a verdict
for the non-moving party." Anderson v. Liberty Lobby, Inc., 477
U.S. 242, 248 (1986).  A fact is "material" only if it might
affect the outcome of the suit under the applicable rule of law.
Id.  Disputes over irrelevant or unnecessary facts will not
preclude a grant of summary judgment.   Id.

In deciding whether there is a disputed issue of material
fact, the court must view the evidence in favor of the non-moving
party by extending any reasonable favorable inference to that
party; in other words, "[T]he nonmoving party's evidence 'is to

---

[4]Count 13 of the Second Amended Complaint raises the claims
for fraud, breach of fiduciary duty and unauthorized
appropriation.  Count 14 of the Second Amended Complaint raises
the claim for breach of contract.

be believed, and all justifiable inferences are to be drawn in [that party's] favor.'" Hunt v. Cromartie, 526 U.S. 541, 552 (1999) (quoting Liberty Lobby, 477 U.S. at 255).  The threshold inquiry is whether there are "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Liberty Lobby, 477 U.S. at 250; Brewer v. Quaker State Oil Refining Corp., 72 F.3d 326, 329-30 (3d Cir. 1995) (citation omitted).

Summary judgment must be denied "if there is a disagreement over what inferences can be reasonably drawn from the facts even if the facts are undisputed". Nathanson v. Medical College of Penn., 926 F.2d 1368, 1372 (3d Cir. 1991).

The moving party always bears the initial burden of showing that no genuine issue of material fact exists, regardless of which party ultimately would have the burden of persuasion at trial.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

The non-moving party "may not rest upon the mere allegations or denials of" its pleading in order to show the existence of a genuine issue.  Fed. R. Civ. P. 56(e).  Defendants must do more than rely only "upon bare assertions, conclusory allegations or suspicions." Gans v. Mundy, 762 F.2d 338, 341 (3d Cir. 1985), cert. denied, 474 U.S. 1010 (1985) (citation omitted); see Liberty Lobby, 477 U.S. at 249-50.  Thus, if the defendants' evidence is a mere scintilla or is "not significantly probative,"

the court may grant summary judgment.  <u>Liberty Lobby</u>, 477 U.S. at

249-50; <u>Country Floors, Inc. v. Gepner</u>, 930 F.2d 1061-62 (3d Cir.

1991).

### B. Whether Summary Judgment Should be Granted on the Breach of Contract Claim (Count Fourteen)

Plaintiffs move for summary judgment against Defendant

Vintage on their breach of contract claim.  To satisfy the

elements of a breach of contract action, a plaintiff must

demonstrate: (1) a valid contract existed between plaintiff and

defendant; (2) defendant breached this contract; (3) plaintiff

performed under this contract; and (4) plaintiff was damaged as a

result of defendant's breach.  <u>See</u> <u>Video Pipeline, Inc. v. Buena</u>

<u>Vista Home Entm't, Inc.</u>, 275 F.Supp 2d 543, 566 (D.N.J. 2003).

Plaintiffs claim that the parties July, 2004 agreement

constituted an enforceable contract.  Defendants argue that no

contract existed because the parties were in negotiations

regarding repayment of the loan.  For the following reasons, this

Court finds that there was a valid contract and that the contract

was breached.

Plaintiffs argue that there was a valid contract between

Plaintiffs and Defendants.  Generally, to have a valid contract,

there must be an offer, acceptance and consideration.  <u>See</u> <u>Smith</u>

<u>v. SBC Commc'ns, Inc.</u>, 178 N.J. 265, 283 (2004).

10

### 1.   Offer and Acceptance

A contract "arises from offer and acceptance, and must be sufficiently definite 'that the performance to be rendered by each party can be ascertained with reasonable certainty.'" Weichert Co. Realtors v. Ryan, 128 N.J. 427, 435 (1992) (quoting West Caldwell v. Caldwell, 26 N.J. 9, 24-25 (1958)).  This concept requires that the parties agree "on essential terms and manifest an intention to be bound by those terms."  Weichert, 128 N.J. at 435.  The Supreme Court of New Jersey has stated:

> It is fundamental that the essential element to the valid consummation of a contract is a meeting of the minds of the contracting parties and that until there is such a meeting of the minds either party may withdraw and end all negotiations····So long as negotiations are pending over matters relating to the contract, and which the parties regard as material to it, and until they are settled and their minds met upon them, it is not a contract, although as to some matters they may be agreed.

DeVries v. The Evening Journal Ass'n, 9 N.J. 117, 119-20 (1952) (citation omitted).[5]

---

[5]   In addition, the Restatement of Contracts Second explains that conduct can manifest assent to an agreement as follows:

> (1)  The manifestation of assent may be made wholly or partly by written or spoken words or by other acts or by failure to act.

> (2)  The conduct of a party is not effective as a manifestation of his assent unless he intends to engage in the conduct and knows or has reason to know that the other party may infer from his conduct that he assents.

Restatement (Second) of Contracts § 19 (1981); see also Weichert, 128 N.J. at 435 (quoting Restatement § 19(1)).

In accordance with this view, New Jersey courts have held that when an offeree accepts the offeror's services without expressing any objection to the offer's essential terms, the offeree has manifested assent to those terms.  See Iacono v. Toll Bros., 225 N.J. Super. 87, 90-92, (App. Div. 1988) (finding offeree's silence and actions, which induced offeror's detrimental reliance, constituted acceptance); see also Weichert, 128 N.J. at 435 (1992).  Accordingly, where an offeree gives no indication that he or she objects to any of the offer's essential terms and passively accepts the benefits of an offeror's performance, the offeree has impliedly manifested his or her unconditional assent to the terms of the offer.

With respect to a formality requirement, parties may effectively bind themselves orally if they agree on "essential terms" of contract and intend to be bound by those terms. California Natural, Inc. v. Nestle Holdings, Inc., 631 F. Supp. 465 (D.N.J. 1986).  Additionally, oral contracts can be entered into even when a formal written document was to be executed subsequently.  Pascarella v. Bruck, 190 N.J. Super. 118, 126, (App. Div. 1983); Berg Agency v. Sleepworld-Willingboro, Inc., 136 N.J. Super. 369, 373-374 (App. Div. 1975).

In this case, the requirements of an offer and acceptance are present.  Specifically, by letter dated July 7, 2004, Plaintiffs' attorney wrote a letter to Defendants stating:

12

> This will confirm our conversation wherein it was agreed
> that Vintage Mortgage will pay the sum $10,000 to
> [Plaintiffs' attorney's] office on behalf of the Lankfords
> on or before July 15, 2004.  An additional $10,000 payment
> will be made to my office on or before August 15, 2004 and
> the balance of the amount due, $241,118.98, will be paid on
> or before September 30, 2004.  Additionally, Vintage will
> provide the Lankfords [with] a security interest in the
> Laurel Road property in the form of a second mortgage to be
> executed immediately.  In exchange, Mr. and Ms. Lankford
> will forbear from the filing of their complaint during this
> period and should the aforementioned terms are satisfied
> appropriate documents will be executed by the Lankfords
> releasing Mr. Lewis and Vintage from any further liability.

(Pl. Ex. 18 - Letter dated July 7, 2004.)  Lewis acknowledged

receipt of this letter.  (See Lewis Dep. Trans. at 113.)

Following receipt of this letter, Vintage wrote and delivered

checks for $10,000 in July and August, in direct accordance with

the agreement acknowledged in the Lankfords' letter.  (see Pl.

Ex. 19.)

Defendants Vintage and Lewis have failed to present any

evidence demonstrating a disputed fact as to the existence of a

valid contract.  Plaintiffs' letter of July 7, 2004 expressly

stated that it was written to confirm an oral agreement on the

terms that followed setting forth a repayment schedule,

arrangement for security, and consideration.  In response, the

Defendants never sent a letter indicating a desire to continue

negotiations or denying that an agreement had been made.  In

fact, Vintage performed under the contract - sending two checks

in accordance with the terms of the agreement outlined in the

letter of July 7, 2004 without raising any question as to the

terms or signaling any continuing negotiation.  Thus, the Court finds that Plaintiffs' inference that Defendants had assented to this agreement was reasonable.  In response to the Defendants' conduct, Plaintiffs did not name Defendants in their Complaint until the July 7, 2004 agreement was breached.  Defendants offer no evidence that they sent these checks as a demonstration of their intention to continue negotiation, and it defies logic that the Defendants would perform under the contract if the parties were still in negotiations.

The Defendants cannot partly comply with the terms of the agreement, enjoy the offeror's performance (forbearing filing a complaint against Defendants) and then claim the parties were merely negotiating.  Thus, Defendants' conduct in accordance with the agreement outlined by the Plaintiffs was sufficient to manifest assent to that agreement.

### 2. Consideration

Plaintiffs' claim that their forbearance from filing a claim against the Defendants was valid consideration for a contract.[6] Forbearance to prosecute or defend a suit or other action which has been or may be instituted is generally held sufficient consideration without inquiring whether or not the suit or the defense would have been successful.  See Williston on Contracts §

---

[6] Defendants do not question the sufficiency of Plaintiffs' consideration in their Opposition Brief.

7:45  The relevant inquiry is whether the party receiving the
benefit of forbearance valued the promise of forbearance, <u>id.</u>
and New Jersey courts have also found that forbearance from
prosecution is valid consideration.  <u>See</u> <u>Onorato Const., Inc. v.
Eastman Const. Co.,</u> 312 N.J. Super. 565 (App. Div. 1998).

In this case, Plaintiffs' forbearance from prosecution
constituted valid consideration.  Defendants were negotiating a
business deal with Fannie Mae, a corporation sponsored by the
United States Government to establish a secondary market for
mortgages insured by the Federal Housing Administration, and that
the proceeds from this deal would go towards repayment of the
long-term loan.  On May 6, 2004, Lewis' attorney assured
Plaintiffs' attorney that payment was forthcoming due to their
pending deal with Fannie Mae.  (Pl. Ex. 17.)  Following this
verbal commitment, Plaintiffs filed their Complaint on June 4,
2004, but that complaint importantly did not name Lewis and
Vintage.  (<u>See</u> Complaint.)  On July 7, 2004, Plaintiffs' attorney
sent a confirmation letter stating terms of the oral agreement.
(Pl. Ex. 18.)  Following receipt of this letter, Defendants made
monthly payments of $10,000 for both July and August in
accordance with that agreement.  (Pl. Ex. 19.)  After these
months of compliance, Defendants ceased performing under the
agreement of July 7, 2004.  As a result, Plaintiffs filed their
First Amended Complaint, naming Vintage and Lewis as Defendants

on January 26, 2005  (Def. SOF ¶ 31, First Amended Complaint.)
This course of events makes it clear that there was an agreement
made for the valued consideration of Plaintiffs' forbearance and
that the Plaintiffs did forbear as promised until the Defendants
breached.

In is clear from Lewis' deposition that he thought Vintage's
negotiations with Fannie Mae would be adversely affected if
Plaintiffs instituted litigation against Vintage, acknowledging
that Plaintiffs' suit could "blemish[]" Vintage and put the
pending transaction with Fannie Mae at risk.  (Lewis Dep. Trans.
at 114.).  (Id.)  Moreover, there is no indication that
Plaintiffs' claim at that time would have been frivolous, or that
Defendants did not believe such a claim could be successfully
made.  As such, Vintage sought and received the benefit of
Plaintiffs' forbearance.  Accordingly, Plaintiffs' forbearance
from legal action constituted valid consideration for the July 7,
2004 contract.[7]

### C.   Plaintiffs' Fraud, Breach of Fiduciary Duty, and "Unauthorized Appropriation" Claims (Count Thirteen)

Plaintiffs move for summary judgment against Defendants
Vintage and Lewis with respect to Plaintiffs' claims of fraud,

---

[7]This Court notes that even if this forbearance were found
not constitute consideration, the Plaintiffs may still have a
contract on the basis of promissory estoppel.  Promissory
estoppel has been recognized in the claim forbearance context by
New Jersey courts.  See Onorato, 312 N.J. Super. at 573 (citing
Friedman v. Tappan Dev. Corp., 22 N.J. 523, 527 (1956)).

breach of fiduciary duty, and unauthorized appropriation.
Specifically, in the Second Amended Complaint, Count Thirteen of
the complaint includes allegations of fraud, breach of fiduciary
duty and "unauthorized appropriations." (Compl. ¶ 92-96.)
Regarding Vintage and Lewis, Count Thirteen alleges that: (1)
Defendants received funds as a loan to Vintage; (2) Defendants
use of the loan funds was not used as Irby promised; (3)
Defendant Lewis used the loan funds in a way he knew to be
unauthorized; and (4) Defendants failed to repay the money upon
request of the Plaintiffs. (<u>Id.</u>)

  Under New Jersey law, to prevail on a claim of fraud, a
plaintiff must prove that: (1) defendants made a
misrepresentation of a material presently existing or past fast;
(2) the misrepresentation was made with knowledge of its falsity
and with the intention that the other party rely thereon; and (3)
the misrepresentation resulted in reliance by the plaintiff to
his or her detriment. <u>Jewish Center of Sussex County v. Whale</u>,
86 N.J. 619, 624 (1986) (citing <u>Foont-Freedenfeld Corp. v.
Electro-Protective Corp.</u>, 126 N.J.Super. 254, 257 (App.Div.
1973), <u>aff'd</u>, 64 N.J. 197 (1974)).

  In order to prevail on a breach of fiduciary duty claim, a
plaintiff must show that there was an agency relationship between
plaintiff and defendant and that the defendant acted in breach of
a duty imposed by the relation. <u>See</u> Restatement (Second) of

17

Torts § 874.  "A fiduciary relationship arises between two persons when one person is under a duty to act for or give advice for the benefit of another on matters within the scope of their relationship."  Restatement (Second) of Torts § 874 cmt. a (1979);  see In re Stroming's Will, 12 N.J.Super. 217, 224 (App. Div. 1951), certif. denied, 8 N.J. 319 (1951).[8]

Regarding these three claims, Plaintiffs have failed to advance any arguments or submit any evidence to demonstrate the absence of a factual dispute and that Plaintiff is entitled to judgment as a matter of law.  For example, with respect to Plaintiffs' claim of fraud, Plaintiffs have presented no evidence that Vintage or Lewis made any misrepresentations or that Plaintiffs relied on such misrepresentations.  Moreover, Plaintiffs have presented no evidence and made no arguments that an agency relationship existed between Plaintiffs and Defendants, an essential element in a breach of fiduciary duty claim.  Thus,

---

[8]  Further, it is unclear what claim the Plaintiffs are making by using the phrase "unauthorized appropriation."  (Compl. at Count Thirteen.)  In the agency context, "unless otherwise agreed, authority of an agent to manage a business extends no further than direction of ordinary operations of business, including authority to make contracts which are incidental to such business, are usually made in it, or are reasonably necessary in conducting it."  Carlson v. Hannah, 6 N.J. 202, 212 (1951).  In a different context, the court in Palmer v. Sconhorn, found that the "[r]ight of privacy includes the right to be free from unwarranted appropriation or exploitation of one's personality."  96 N.J.Super. 72, 75 (Ch. Div. 1967)(where a professional golfer's identity was used in a game without his authorization.)

Plaintiffs have failed to meet their burden under Fed. R. Civ. P.
56, and their motion for summary judgment will be denied.  <u>See</u>
<u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).

### D.   Damages

Plaintiffs request damages in the amount of $241,118.98
together with interest from September 30, 2004.  Plaintiffs
additionally request reasonable attorney fees and costs.

### 1.   Calculation of Damages to be Awarded

The Court will grant Plaintiffs' request for damages in the
amount of $241,118.98 together with interest from September 30,
2004.  However, Plaintiffs' briefs and submissions, fail to offer
any calculation method or schedule detailing how the Court is to
calculate interest due from September of 2004.  Accordingly, this
Court will require a supplemental motion as to the amount to be
awarded as interest.  Accordingly, Plaintiffs shall make a
supplemental submission putting forth Plaintiffs' calculations of
interest due to them and the legal basis for the selected rate of
interest.

### 2.   Attorney's Fees

Plaintiffs request attorney fees based on the draft mortgage
and note which included provisions for attorney fees and costs to
be paid by the Defendants in the event of default.  (Def. Ex. 9.)
In general New Jersey law disfavors the shifting of attorneys'
fees.  <u>See</u> <u>North Bergen Rex Transp., Inc. v. Trailer Leasing Co.</u>,

19

158 N.J. 561, 569 (1999); <u>Kellam Assocs., Inc. v. Angel Projects, LLC</u>, 357 N.J. Super. 132 (App. Div. 2003). Nevertheless, New Jersey law permits parties to a contract to shift liability for attorneys' fees.  <u>See</u> <u>Cohen v. Fair Lawn Dairies, Inc.</u>, 86 N.J. Super. 206, 214-16, (App. Div. 1965). However, even where attorney-fee shifting is controlled by contractual provisions, courts will strictly construe that provision in light of the general policy disfavoring the award of attorneys' fees.  <u>McGuire v. City of Jersey City</u>, 125 N.J. 310, 327 (1991).

The Plaintiffs' reliance on an unsigned draft provision is insufficient.  The terms of the Note and Mortgage are different from the agreement of July 7, 2004 in many respects.  Where the Note and Mortgage were to be executed in consideration for the loan funds received, the July 7, 2004 agreement is based on consideration of forbearance from filing suit.  There is no mention of an attorney fee provision in the July 7, 2004 letter from Plaintiffs' counsel, and no other manifestation of the Defendants' assent to such a provision.

Given the fact that New Jersey law disfavors fee shifting, this Court will not infer manifested assent to an unexecuted, unacknowledged provision without greater evidence.  Accordingly, the Plaintiffs' request for attorney fees and costs should be denied.

20

## III. PLAINTIFFS' MOTION FOR RULE 11 SANCTIONS

Plaintiffs have also moved to sanction Defendants pursuant to Rule 11, Fed. R. Civ. P., alleging that Defendants pursuit of defenses in this case was frivolous and dilatory.  Rule 11 allows for sanctions if a party's submission does not meet the following requirements:

> (1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;
>
> (3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and
>
> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.

Fed. R. Civ. P. 11(b).

Rule 11 is designed to ensure that pleadings are not used for improper purposes such as harassment, delay or needless increase in litigation expense.  Lieb v. Topstone Indus. Inc., 788 F.2d 151, 157 (3d Cir. 1988).  In Lieb, the Third Circuit instructed on how Rule 11 motions should be considered:

> [W]e do not require bad faith, nor do we mandate an allowance of fees as a concomitant of prevailing in every case, but we do favor an evenhanded approach.  The district courts' discretion may be exercised within these boundaries.

> Factors which should play a part include frivolousness, motivation, objective unreasonableness (both in the factual and in the legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence. We expressly do not limit the factors to those we have mentioned, realizing that others may present themselves in specific situations.

Id. The objective standard imposed by Rule 11 is firmly established in this circuit, applied to discourage pleadings "without factual foundation, even though the paper was not filed in subjective bad faith." Bradgate Assocs. Inc. v. Fellows, Read & Assocs., Inc., 999 F.2d 745, 749 (3d Cir. 1993). A district court should not evaluate pleadings with the value of hindsight, looking to the opposing party's conduct in light of what seemed proper at the time the questioned submissions were made. See CTC Imports and Exports v. Nigerian Petroleum Corp., 951 F.2d 573, 578 (3d Cir. 1991).

In this case, Plaintiffs argue that the Defendants pursued their defense of this action to delay the proceedings despite knowing their defenses were frivolous. Plaintiffs specifically argue that the Defendants acknowledged their obligation to repay the outstanding balance of the long-term loan, but advanced defensive arguments nonetheless.

The Court, however, finds that the Defendants' opposition to summary judgment, while ineffective in raising a genuine issue of material fact, does not meet the standard for sanctions established in Lieb. Plaintiffs' motion for summary judgment

22

focused, in large part, on the value of forbearance as
consideration for a contract.  Though they submitted sufficient
evidence to demonstrate their entitlement to judgment as a matter
of law, their treatment of issues such as offer and acceptance
were minimal.  In their opposition brief, Defendants argued that
there is a material issue of fact regarding whether the parties
had reached an agreement (in particular, as to the repayment
terms of the loan) or if the correspondence between the parties
represented ongoing negotiations.  Defendants' presentation of
this argument was not frivolous and does not appear as though
intended simply to delay the proceedings.  While it is clear in
hindsight that the Plaintiffs were entitled to judgment as a
matter of law on Plaintiffs' breach of contract claims, it may
not have been so crystalline at the time Defendants received the
motion.

Though the Defendants' treatment of these proceedings and
arguments put forth in opposition should not be considered
admirable, their counsel's conduct has not reached the level
where Rule 11 sanctions are appropriate.  Accordingly, the
Plaintiffs' motion for sanctions will be denied.

**IV.  CONCLUSION**

For the reasons above, there is no genuine issue of material
fact with respect to Plaintiffs' breach of contract claim against
Defendant Vintage.  This Court finds that the parties' had a

23

valid contract that was breached by Vintage's failure to perform, and will grant summary judgment in favor of the Plaintiffs as to liability and award Plaintiffs the demanded sum of $241,118.98. The Court, however, will require a supplemental motion on the amount of interest damages to award Plaintiffs and the legal basis for the selected rate.  In addition, this Court finds that Defendants' opposition did not contain frivolous arguments intended to delay these proceedings and, as such, Plaintiffs' motion for Rule 11 sanctions will be denied.

The accompanying Order is entered.


**September 29, 2006**                    **s/ Jerome B. Simandle**
Date                                      JEROME B. SIMANDLE
                                          United States District Judge